UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



_____

LEMUEL SMITH,

                Plaintiffs,

    v.

ANTHONY J. ANNUCCI, *Acting Commissioner,*
*Department of Corrections and Community*
*Supervision, et al.,*

                Defendants.

_____

**DECISION AND ORDER**

6:18-cv-06261 EAW

Plaintiff Lemuel Smith ("Plaintiff") is an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), currently housed at the Five Points Correctional Facility ("Five Points"). (Dkt. 1 at ¶¶ 2-3). Represented by counsel, Plaintiff alleges that he has been unlawfully held in "conditions of extreme isolation and restricted movement for nearly 37 years," first in DOCCS' Special Housing Unit (the "SHU"), and then, "for the past 22 years, in Administrative Segregation ('Ad Seg') status." (*Id.* at ¶ 2). Pursuant to 42 U.S.C § 1983, Plaintiff alleges violations of his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment right to due process of law. (*Id.* at ¶¶ 80-100).

Defendants have filed a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) seeking partial dismissal of Plaintiff's Complaint. (Dkt. 8). In particular, Defendants seek dismissal of all of Plaintiff's claims except his procedural due process claims beginning March 30, 2015. (Dkt. 8-1 at 12). Defendants further argue that Plaintiff should be limited to seeking only nominal and punitive damages. (*Id.*). For the reasons discussed below,

Defendants' motion is granted with respect to Plaintiff's substantive due process claim and as to his procedural due process claim to the extent it relies on reviews of his status that occurred before March 30, 2015, and is denied in all other respects.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.   Factual Background

The facts underlying Plaintiff's initial commitment to the SHU and subsequent placement in administrative segregation are a matter of public record, having been litigated in numerous courts, and are set forth below to provide context. As is required at this stage of the proceedings, the Court has treated Plaintiff's factual allegations set forth in the Complaint as true.

In May 1981, Plaintiff, who was then serving two 25-years-to-life sentences for second degree murder, murdered Corrections Officer Donna Payant at the Green Haven Correctional Facility ("Green Haven"). *Smith v. Coughlin*, 748 F.2d 783, 785 (2d Cir. 1984). Plaintiff was convicted of first degree murder in April 1983 and was sentenced to death in June 1983. *Id.* He was thereafter transferred to the Unit of Condemned Persons at Green Haven. *Id.* In June 1984, the New York Court of Appeals ruled that the portion of New York's death penalty statute pursuant to which Plaintiff had been sentenced was unconstitutional, vacated Plaintiff's death sentence, and remanded for resentencing. *People v. Smith*, 63 N.Y.2d 41, 79 (1984). Plaintiff was thereafter sentenced to life imprisonment. *Smith v. Goord*, 250 A.D.2d 946, 946 (3d Dep't 1998). The New York State Appellate Division, Third Department (the "Appellate Division") has explained:

In addition, following a tier III disciplinary hearing, petitioner was found guilty of institutional rule violations in connection with the Payant murder and as a penalty received 15 years in the special housing unit. In September 1996, just prior to the completion of that penalty, petitioner was given notice of the recommendation that he be placed in administrative segregation pursuant to 7 NYCRR 301.4[1]. Following a hearing conducted pursuant to 7 NYCRR 301.4(a) and 7 NYCRR part 254, the recommendation was confirmed and administrative segregation was ordered. That determination was affirmed upon administrative review[.]

*Id.* Plaintiff challenged his placement in administrative segregation in state court, and the Appellate Division affirmed DOCCS' decision, finding:

Deferring to [DOCCS'] unique expertise in predicting inmates' future behavior on the basis of a subjective evaluation of their past conduct, we conclude that the considerable record evidence concerning petitioner's numerous heinous crimes, including his several murder convictions and other acts of brutality toward women, and particularly his murder of a prison employee while housed in a maximum security prison, adequately support the conclusion that petitioner is a sexual predator who cannot be released into the general prison population without posing a serious threat to the life and safety of female employees[.]

*Id.* at 947.

Pursuant to New York State regulation, "[a]n inmate in administrative segregation status shall have such status reviewed every 60 days" by a "three-member committee consisting of a representative of the facility executive staff, a security supervisor, and a member of the guidance and counseling staff." 7 NYCRR § 301.4(d). The committee is instructed to "examine the inmate's institutional record and prepare and submit to the superintendent . . . a report setting forth . . .: (i) reasons why the inmate was initially determined to be appropriate for administrative segregation; (ii) information on the

---

[1]    "NYCRR" refers to the New York Codes, Rules and Regulations.

inmate's subsequent behavior and attitude; and (iii) any other factors that they believe may favor retaining the inmate in or releasing the inmate from administrative segregation." *Id.* Thereafter, the superintendent is to review the committee's report along with "any written statement received from the inmate," and to "make a determination to retain the inmate in or release the inmate from administrative segregation." *Id.* Plaintiff alleges that he has not received meaningful review of his administrative segregation status since it began in 1996, and that instead Defendants have arbitrarily and capriciously predetermined that Plaintiff will stay in administrative segregation status indefinitely. (Dkt. 1 at ¶¶ 95-96).

Plaintiff further alleges that the conditions of his confinement in administrative segregation have been detrimental to his physical and mental health and amount to cruel and unusual punishment. (*Id.* at ¶ 46). In administrative segregation, Plaintiff has limited contact with his family and friends and "no access to group recreation, group education, group prayer, or group meals." (*Id.* at ¶¶ 48-49). Plaintiff is confined by himself to his cell for "23 to 24 hours each day" and, because he must use a wheelchair, "is sedentary nearly 24 hours each day[.]" (*Id.* at ¶¶ 3, 50-51). Plaintiff's cell has one small window which faces a "recreational cage" that adjoins his cell and is accessible through a door. (*Id.* at ¶ 53). Plaintiff's cell was, until recently, located near the "strip cell" where prisoners suffering from mental illness are temporarily held, and Plaintiff was "regularly subjected to [those prisoners'] screaming, outbursts, and banging." (*Id.* at ¶ 55). Plaintiff's physical limitations prevent him from cleaning his own cell, so a porter cleans it each Saturday. (*Id.* at ¶ 56). Plaintiff is given two hours per day of "recreation time," during which he is allowed access to the recreational cage that adjoins his cell. (*Id.* at ¶ 57).

From 2013 until approximately April 2017, Plaintiff was allowed one 30-minute monitored phone call per week. (*Id.* at ¶ 58). In April 2017, his phone privileges were reduced to one 15-minute monitored call per week. (*Id.*). Between approximately June 2012 and April 2017, Plaintiff was allowed "out-of-cell time" for a maximum of two hours per week, during which he was placed in a restraint chair and permitted to watch a video. (*Id.* at ¶59). Plaintiff's ability to participate in out-of-cell time was terminated in April 2017 without explanation. (*Id.*).

Plaintiff is now 76 years old and his health is poor. (*Id.* at ¶¶ 2, 61). He is confined to a wheelchair and suffers from muscle atrophy in his hands and legs, as well as a spinal condition. (*Id.* at ¶¶ 61-62). Plaintiff takes more than 19 medications daily and has had surgeries on his neck, elbows, and left foot, and has "great difficulty moving his wheelchair." (*Id.* at ¶ 64). Plaintiff is required to wear a helmet due to seizures, has arthritis in both hands and carpal tunnel syndrome in his wrists, has sores on his body due to his sedentary condition, and requires the use of a back brace. (*Id.* at ¶¶ 65-68). Plaintiff is severely depressed and experiences persistent feelings of hopelessness, along with a lack of concentration and forgetfulness. (*Id.* at ¶ 69).

## II.  **Procedural Background**

Plaintiff commenced the instant action on March 30, 2018. (Dkt. 1). Defendants filed their motion to dismiss on May 22, 2018. (Dkt. 8). Plaintiff filed a response in opposition on June 18, 2018 (Dkt. 12), and Defendants filed a reply on June 28, 2018 (Dkt. 13).

**DISCUSSION**

## I.    <u>Legal Standard</u>

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2279 (2017). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen*

- 6 -

*v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

## II.     <u>Procedural Due Process Claim</u>

Plaintiff's third cause of action alleges a violation of his right to procedural due process under the Fourteenth Amendment. (Dkt. 1 at ¶¶ 92-97). In particular, Plaintiff alleges that Defendants have denied him "meaningful and timely periodic reviews of his continued long-term and indefinite detention in Ad Seg, and meaningful notice of what he must do to earn release[.]" (*Id.* at ¶ 93).

"To ensure that a state prison facility does not use Ad Seg as a pretext to commit an inmate to the SHU indefinitely, the Due Process Clause of the Fourteenth Amendment mandates that prison officials periodically review whether an inmate continues to pose a threat to the facility." *Proctor v. LeClaire*, 846 F.3d 597, 601 (2d Cir. 2017) ("*Proctor II*"). Accordingly, "[o]nce an inmate has been confined in Ad Seg," it is necessary for prison officials to "'engage in some sort of periodic review of the confinement' to verify that the inmate 'remains a security risk' throughout his term." *Id.* at 609 (quoting *Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983)). The Second Circuit has explained:

> [M]eaningful periodic reviews of Ad Seg must at least satisfy the following criteria: First, the reviewing prison officials must actually evaluate whether the inmate's continued Ad Seg confinement is justified. It is not sufficient for officials to go through the motions of nominally conducting a review meeting when they have developed a pre-review conclusion that the inmate will be confined in Ad Seg no matter what the evidence shows. Review with a pre-ordained outcome is tantamount to no review at all. Second, the reviewing officials must evaluate whether the justification for Ad Seg exists at the time of the review or will exist in the future, and consider new relevant evidence as it becomes available. . . . Third and finally, the reviewing officials must maintain institutional safety and security (or another valid

administrative justification) as their guiding principles throughout an inmate's Ad Seg term.

*Id.* at 611 (citation omitted).

Here, Plaintiff alleges that he has been deprived of any meaningful review of his continued confinement in administrative segregation, that Defendants have pre-ordained that he will remain in administrative segregation indefinitely, and that Defendants have failed to take into new relevant information regarding his dangerousness (or lack thereof) as it has become available. As assessed against the standards set forth in *Proctor*, Plaintiff has clearly set forth a viable procedural due process claim.

Defendants do not argue to the contrary. Instead, they seek to limit Plaintiff's procedural due process claim in two ways. First, they argue that Plaintiff's challenge to any reviews occurring before March 30, 2015, is barred by the applicable statute of limitations. Second, they argue that this Court lacks the authority to order Plaintiff released from administrative segregation and that Plaintiff therefore cannot seek compensatory damages for the time he claims to have wrongfully been held in isolation.

The Court agrees with Defendants that Plaintiff cannot maintain his procedural due process claim for any reviews that occurred prior to March 30, 2015. "New York's three-year statute of limitations for unspecified personal injury actions, New York Civil Practice Law and Rules § 214(5), governs section 1983 actions in New York." *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997). Plaintiff's Complaint was filed on March 30, 2018 (Dkt. 1), and so any of his claims that accrued prior to March 30, 2015, are time-barred.

Plaintiff argues that his procedural due process claim is timely as to all of his reviews because he has pleaded a continuing violation of his constitutional rights. This argument lacks merit. "The continuing violation doctrine, where applicable, provides an exception to the normal . . . accrual date" and "applies to claims composed of a series of separate acts that collectively constitute one unlawful [ ] practice." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (quotations omitted). Importantly, the continuing violation doctrine does not apply to "discrete unlawful acts, even where those discrete acts are part of a serial violation[.]" *Id.* (quotation omitted). Instead, it applies "to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Id.* (rejecting application of the continuing violation doctrine to claim by inmate that he had been housed in the SHU without appropriate review).

The procedural due process violations complained of by Plaintiff in this case, while arguably part of a serial violation of his constitutional rights, constitute discrete unlawful acts. Plaintiff could have brought a claim for violation of his right to procedural due process each time his administrative segregation was continued. *See Proctor v. LeClaire*, 715 F.3d 402, 416 (2d Cir. 2013) ("*Proctor I*") (noting that, "[i]n theory," an inmate confined to administrative segregation could bring an action after each adverse review, although such seriatim litigation is unlikely in practice). As such, the reviews in question do not constitute a continuing violation, and Plaintiff's procedural due process claim may proceed only as to the reviews that occurred within three years of the filing of his Complaint. *See Gonzalez*, 802 F.3d at 223-24 ("[A] discrete [due process] claim may accrue . . . each time that a defendant fails to provide an inmate with the notice, hearing,

or evaluation to which he is entitled after a liberty interest attaches. These denials or failures are discrete acts, which may combine to form a 'serial violation.' But [*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)] forecloses the continuing violation doctrine's application to claims of this nature."); *see also J.S. v. Swaha*, No. 11 CIV. 103 (NRB), 2015 WL 10786859, at *1 (S.D.N.Y. Sept. 11, 2015) ("[A] prison administrator's failure to review an inmate's SHU assignment over a period of time is considered a series of discrete acts.") (quotation omitted); *Cabassa v. Gummerson*, No. 9:01-CV-1039, 2008 WL 4416411, at *8 (N.D.N.Y. Sept. 24, 2008) (finding the continuing violation doctrine inapplicable to claim that the defendants had retained the plaintiff in administrative segregation for 161 days without meaningful review); *McFadden v. Kralik*, No. 04CIV8135RCCJCF, 2007 WL 924464, at *7 (S.D.N.Y. Mar. 28, 2007) (finding the continuing violation doctrine inapplicable to the plaintiff's claim regarding a "series of decisions over five years by DOCS to keep him in administrative segregation"). The Court therefore grants Defendants' motion to dismiss with respect to Plaintiff's procedural due process claim to the extent it is based on reviews prior to March 30, 2015.[2]

---

[2] For the reasons discussed in section III of this Decision and Order, the Court finds that Plaintiff's Eighth Amendment claims are subject to the continuing violation doctrine and that those claims are contingent on whether, as Plaintiff claims, Defendants pre-ordained that he was to remain in administrative segregation regardless of the outcome of the periodic reviews. Accordingly, while Plaintiff may not seek damages based on any reviews that occurred prior to March 30, 2015, he may nonetheless conduct discovery regarding such reviews and the manner in which they were conducted. *Cf. Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 176 (2d Cir. 2005) (holding that evidence of events that occurred outside the statute of limitations may be admissible where they constitute necessary background information).

Plaintiff cites *Edmonson v. Coughlin*, 21 F. Supp. 2d 242 (W.D.N.Y. 1998) for the proposition that his procedural due process claims constitute a continuing violation. However, *Edmonson* predates the decision in *Gonzalez*, wherein the Second Circuit expressly found that procedural due process claims of the nature asserted by Plaintiff in this case are not subject to the continuing violation doctrine. Accordingly, *Edmonson* does not change the Court's conclusions.

With respect to available remedies, the Court is not persuaded by Defendants' argument that it lacks authority to order that Plaintiff be released from administrative segregation should this matter ultimately resolve in Plaintiff's favor. While it is true that this Court cannot "review the substance of Defendants' decision to confine [Plaintiff] in Ad Seg" or "substitute [its] judgment for Defendants'" as to Plaintiff's dangerousness, *Proctor II*, 846 F.3d at 608, the Court nevertheless has "considerable authority to effectuate its orders and prevent the continuation of unconstitutional conduct proven in the courtroom[.]" *Blake v. Coughlin*, No. 9:92CV1351, 2006 WL 2270383, at *12 (N.D.N.Y. Aug. 8, 2006) (holding that in order to obtain release from administrative segregation, the plaintiff would have to show that parties before the court had violated his constitutional right to due process); *see also Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991) (holding that an inmate may use civil rights law to "seek[] a different program or location or environment . . ., even if, as will usually be the case, the program or location or environment he is challenging is more restrictive than the alternative he seeks"). To be clear, the Court is not reaching a finding that release from administrative segregation would necessarily be the appropriate remedy in this case. However, the Court rejects Defendants'

argument that it lacks the authority to order that Plaintiff be moved from administrative segregation into a less restrictive environment. Moreover, because Defendants' argument regarding compensatory damages is contingent on its argument that the Court lacks the authority to order Plaintiff released from administrative segregation, it also fails. Accordingly, the Court will not dismiss Plaintiff's request for release from administrative segregation or his claim for compensatory damages at this juncture.

## III.    **Eighth Amendment Claims**

Plaintiff's first two causes of action allege violations of his Eighth Amendment right to be free from cruel and unusual punishment. In particular, Plaintiff's first cause of action alleges that his "prolonged isolated confinement" has deprived him of "life's necessities" and caused him "serious psychological pain and serious physical injury." (Dkt 1, ¶¶ 80-88). Plaintiff's second cause of action alleges that his "prolonged isolated confinement" serves "no legitimate penological interest" and thus represents a "disproportionate punishment." (*Id.* at ¶¶ 89-91). Defendants seek dismissal of these claims, arguing that Plaintiff has alleged only that he has been subject to the standard conditions of administrative segregation and that, without more, this is insufficient to support an Eighth Amendment claim. (Dkt. 8-1 at 5-7). For the reasons set forth below, the Court finds that Plaintiff's Eighth Amendment claims are not subject to dismissal at this time.

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth

Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotations and citations omitted). As the Second Circuit has explained:

> To demonstrate that the conditions of his confinement constitute cruel and unusual punishment, the plaintiff must satisfy both an objective test and a subjective test. First, the plaintiff must demonstrate that the conditions of his confinement result in unquestioned and serious deprivations of basic human needs. Second, the plaintiff must demonstrate that the defendants imposed those conditions with deliberate indifference.

*Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (quotations and citations omitted). "The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to 'adequate food, clothing, shelter, sanitation, medical care and personal safety.'" *Walker v. Bellnier*, No. 917CV1008GTSCFH, 2017 WL 5135702, at *9 (N.D.N.Y. Nov. 3, 2017) (quoting *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir. 1978)).

Courts in this Circuit have held that that as a general rule, "administrative segregation conditions, even though restrictive and harsh, are insufficient to establish Eighth Amendment violations because they are part of the penalty that criminal offenders pay for their offenses against society." *Tavares v. Amato*, 954 F. Supp. 2d 79, 92 (N.D.N.Y. 2013) (quotations and alterations omitted). However, courts are also cognizant that "the deleterious effects of isolated housing on inmates—especially to those assigned to long-term solitary confinement—are well-known and amply documented," including the fact that prolonged solitary confinement "can and does lead to significant psychological harm." *Peoples v. Annucci*, 180 F. Supp. 3d 294, 299 (S.D.N.Y. 2016). Accordingly, courts have found Eighth Amendment violations where inmates are held in solitary confinement for

extended periods of time, such that the effects are "grossly disproportionate" to the reasons for the isolation. *Peoples v. Fischer*, 898 F. Supp. 2d 618, 621 (S.D.N.Y. 2012); *see also Shoatz v. Wetzel*, No. 2:13-CV-0657, 2014 WL 294988, at *2-3 (W.D. Pa. Jan. 27, 2014) (denying motion to dismiss Eighth Amendment claim brought by a plaintiff who had been held in solitary confinement for "over twenty-two consecutive years" because "[t]he duration of Plaintiff's solitary confinement has continued for a sufficient length of time that relief on his Eighth Amendment claim is plausible"); *Silverstein v. Fed. Bureau of Prisons*, 704 F. Supp. 2d 1077, 1098 (D. Colo. 2010) (denying motion to dismiss Eighth Amendment claim where the plaintiff, who had murdered two inmates and a corrections officer, had been held in solitary confinement for more than twenty years).

Defendants argue that Plaintiff's Eighth Amendment claims must be dismissed because the Court cannot second-guess Defendants' determination that Plaintiff is dangerous and that his prolonged confinement in administrative segregation is therefore penologically justified. The Court is not persuaded. While the initial 1996 determination that Plaintiff should be confined to administrative segregation, which was upheld by the Appellate Division, is unreviewable by this Court, Plaintiff alleges that since that time Defendants have failed to perform a single meaningful review of his status, but have instead pre-ordained that he shall remain in administrative segregation regardless of any new evidence or changed circumstances. Treating these allegations as true (as the Court must at this stage of the proceedings), Plaintiff has adequately alleged that his long-term isolation has been imposed not for legitimate penological purposes, but solely for the purpose of inflicting harm upon him. Moreover, the Court cannot impermissibly second-

guess a determination of dangerousness by Defendants where Defendants have not actually made any such determination but have instead merely gone through the motions to reach a pre-ordained conclusion. In other words, Plaintiff's Eighth Amendment claims are intertwined with his procedural due process claims—if Defendants have failed to provide any meaningful review of Plaintiff's status for more than 20 years but have instead held him in administrative segregation for solely punitive reasons, his right to due process and his right to be free from cruel and unusual punishment are both implicated. On the other hand, if Defendants have appropriately reviewed Plaintiff's status and have reached the conclusion that Plaintiff cannot be released from administrative segregation for reasons of institutional safety, Plaintiff cannot succeed on either of his claims. Accordingly, because the viability of Plaintiff's Eighth Amendment claims turns on issues of fact, Defendants' motion to dismiss these claims is denied.

The Court further finds that, unlike his procedural due process claim, Plaintiff's Eighth Amendment claims state a continuing violation, because they did not accrue until sufficient time had passed to render Plaintiff's continued confinement cruel and unusual. *See Gonzalez*, 802 F.3d at 224 ("An Eighth Amendment claim predicated on SHU confinement . . . typically accrues only after an inmate has been confined in the SHU for a prolonged period of time. . . . [The plaintiff's Eighth Amendment] claim as he has pled it, assuming it otherwise is viable, accrued only after the defendants had confined him in the SHU for some threshold period of time. This renders the continuing violation doctrine applicable."). Accordingly, Plaintiff's Eighth Amendment claims are not time-barred, even with respect to events occurring before March 30, 2015.

Defendants also argue that they are entitled to qualified immunity with respect to Plaintiff's Eighth Amendment claims. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) "A right is 'clearly established' if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Beckles v. City of N.Y.*, 492 F. App'x 181, 182 (2d Cir. 2012) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). Here, the Court finds that there are issues of fact regarding Defendants' entitlement to qualified immunity. "Numerous courts have found that long stretches of segregation can constitute cruel and unusual punishment." *Fischer*, 898 F. Supp. 2d at 625-26. If, as Plaintiff alleges, Defendants knowingly confined him in administrative segregation for multiple decades strictly for punitive reasons and without penological justification, the Court cannot conclude, at this stage of the proceedings, that qualified immunity would shield those actions. *See Shoatz v. Wetzel*, No. 2:13-CV-0657, 2016 WL 595337, at *12 (W.D. Pa. Feb. 12, 2016*)* (denying motion for summary judgment on Eighth Amendment claims on basis of qualified immunity and noting that "in 1978, the Supreme Court stated that '[c]onfinement in a prison or in an isolation cell is a form of punishment subject to scrutiny under Eighth Amendment standards'" (quoting *Hutto v. Finney*, 437 U.S. 678, 685 (1978))).

## IV.   Substantive Due Process Claim

Plaintiff's fourth cause of action alleges a violation of his Fourteenth Amendment right to substantive due process, on the basis that Defendants have predetermined he will

stay in administrative segregation, thereby "rendering the periodic reviews substantively meaningless." (Dkt. 1 at ¶¶ 98-100). Defendants seek dismissal of this cause of action, arguing that it is "subsumed by the Eighth Amendment claims" and that Plaintiff has "not pled a condition which is arbitrary, conscience-shocking, or oppressive in a constitutional sense as required to state a claim under the Fourteenth Amendment." (Dkt. 8-1 at 5-6) (quotation omitted). For the reasons discussed below, the Court agrees that Plaintiff has failed to plead a viable substantive due process claim.

"[W]here another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process." *Kia P. v. McIntyre*, 235 F.3d 749, 757-58 (2d Cir. 2000) (quotations omitted). The only allegedly shocking behavior in this case is Defendants' confinement of Plaintiff in administrative segregation without penological justification. "In other words, what would serve to raise [Defendants'] actions beyond the wrongful to the unconscionable and shocking are facts which, if proven, would constitute, in themselves, specific constitutional violations." *Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005). Under these circumstances, Plaintiff's substantive due process claim is "subsumed in [his] more particularized allegations," and subject to dismissal. *Id.*; *see also Proctor v. LeClaire*, No. 909CV1114GLSDEP, 2017 WL 3396538, at *3 (N.D.N.Y. Aug. 8, 2017) (dismissing substantive due process claim based on prolonged confinement in administrative segregation because the plaintiff was "packag[ing] arguments that should be directed at procedural due process and Eighth Amendment claims into a claim based on a violation of substantive due process; simply

stated, these assertions do not fit the claim before the court"). The Court grants Defendants' motion to dismiss with respect to Plaintiff's fourth cause of action.

## **CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss (Dkt. 8) is granted with respect to Plaintiff's procedural due process claim (Plaintiff's third cause of action) solely to the extent it is based on reviews that occurred prior to March 30, 2015, and with respect to Plaintiff's substantive due process claim (Plaintiff's fourth cause of action) in its entirety. Defendants' motion is denied in all other respects.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: February 11, 2019
      Rochester, New York