UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**LEMUEL SMITH,**

*Plaintiff*,

-against-

**COMMISSIONER ANNUCCI, et al.**,

*Defendants*.

**DEFENDANTS' PRETRIAL SUBMISSIONS**

**18-CV-6261**

---

    Pursuant to the Order of April 18, 2023, of the Hon. Elizabeth A. Wolford, United States District Judge, Defendants, by their attorney, Letitia James, Attorney General of the State of New York, Hillel Deutsch, Assistant Attorney General, of counsel, herein submits Pretrial Submissions and Voir Dire Information

Dated:      January 22, 2024
              Rochester, NY

LETITIA JAMES
Attorney General of the State of New York
Attorney for Defendants

 s/ Hillel Deutsch
HILLEL DEUTSCH
Assistant Attorney General of Counsel
NYS Office of the Attorney General
144 Exchange Boulevard, Suite 200
Rochester, New York 14614
Telephone: (585) 546-7430
hillel.deutsch@ag.ny.gov

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**LEMUEL SMITH,**

*Plaintiff*,

-against-

**COMMISSIONER ANNUCCI, et al.**,

*Defendants*.

**DEFENDANTS' VOIR DIRE INFORMATION**

**18-CV-6261**

---

Pursuant to the Order of April 18, 2023, of the Hon. Elizabeth A. Wolford, United States District Judge, Defendants, by their attorney, Letitia James, Attorney General of the State of New York, Hillel Deutsch, Assistant Attorney General, of counsel, herein submit Defendants' Voir Dire Information

### A.    DESCRIPTION OF THE CASE

In 1981, while incarcerated at Green Haven Maximum Security Correctional Facility, Plaintiff Lemuel Smith tortured and murdered corrections Officer Donna Payant. He then discarded of her body such that it was not recovered until the next day, twenty miles away from the prison. In addition to his criminal conviction for murder, Plaintiff was placed in the Special Housing Unit "SHU" until 1996.  On September 16, 1996, a hearing was held to determine if Plaintiff could be safely placed in general population. The hearing officer determined Plaintiff was a danger to staff and fellow incarcerated individuals, and he was placed in administrative segregation ("ad seg"). Plaintiff challenged this determination in State Court, and it was upheld by the New York State appellate courts. Smith v. Goord, 250 A.D.2d 946, 947 (3d. App. 1998).

As a prisoner in ad seg, Lemuel Smith was entitled to periodic reviews to determine if he should be released. By DOCC Directive 4933, every 60 days a committee at the facility level would meet to determine if, in their opinion Smith should continue to remain in ad seg. They would issue their recommendation to a committee at DOCCS Central Office in Albany. That committee would issue an opinion as to whether Smith should remain in ad seg and forward their recommendation to the Deputy Commissioner for Correctional Facilities. The Deputy Commissioner for Correctional Facilities then made a final determination as to Smith's ad seg status.

2

Defendant Joseph Bellnier was Deputy Commissioner for Correctional Facilities of the New York State Department of Corrections and Community Supervision (DOCCS) from 2011 through September 2017. Defendant James O'Gorman succeeded Mr. Bellnier as Deputy Commissioner for Correctional Facilities, and began in that position in September 2017.

Plaintiff was released from ad seg in September 2020 into involuntary protective custody, following an involuntary protective custody hearing.

Plaintiff asserts that he should have been released from ad seg earlier than his actual date of release in 2020, and that his ad seg reviews were either untimely, insufficient, or pretextual. Defendants assert that Plaintiff received regular, timely, and substantive reviews, and that he was released when a consensus of security experts determined that he was no longer a substantial risk to staff or other incarcerated individuals if he were to be released from ad seg.

### B.    NAME AND ADDRESS OF COUNSEL:

Hillel Deutsch
Assistant Attorney General
NYS Office of the Attorney General
144 Exchange Boulevard, Suite 200
Rochester, New York 14614
Telephone: (585) 546-7430

### C.    NAMES AND ADDRESSES OF DEFENDANTS:

DOCCS Commissioner (ret.) Anthony Annucci
Deputy Commissioner (ret.) Joseph Bellnier
Deputy Commissioner (ret.) James O'Gorman
1220 Washington Ave.
Albany, NY 12226

### D.    NAMES AND ADDRESSES OF WITNESSES:

Corrections Officer Shawn Zima
Wende Correctional Facility
3040 Wende Rd.
Alden, NY 14004

**E.    PROPOSED QUESTIONS TO THE JURY ON VOIR DIRE.**

Defendant respectfully requests that the Court pose the following questions to the prospective jurors:

**A.    <u>Introduction</u>**

1)    Do you understand that the purpose of this voir dire examination is to secure a jury who can fairly try the issues between plaintiff and defendant without letting some personal matter in their backgrounds or experiences taint the verdict?

2)    This trial may last between three (3) days and one (1) week. Do you all have the ability to serve on this jury, given such a schedule?

3)    Are any of you smokers? Do you understand that you may be forced to go for rather long periods without being able to smoke? Do you understand that you will not be able to smoke in the deliberation room?

4)    Do any of you have any physical problems which would prevent you from serving on a jury?

**B.    <u>Background of Lawsuit</u>**

1)    Do any of you know the plaintiff in this case?

2)    Do any of you know any of the family of the Plaintiff?

3)    Do any of you know the Defendants in this case?

4)    Do any of you know any of the family of the Defendants?

5)    Defendants are represented by the Attorney General Letitia James of the State of New York, by Hillel Deutsch, Assistant Attorney Generals for the Attorney General of the State of New York. Do any of you know these people, personally or professionally?

6)      Have any of you had any personal or professional contact or dealings with Ms. James, or any Assistant Attorney General of the State of New York?

7)      Have any of you either been represented by or prosecuted by the State of New York or the New York State Attorney General's Office?

8)      Have any of you either sued or been sued by the State of New York, its agencies or employees?

9)      Are any of you related to any of the parties, lawyers or witnesses who have been named?

10)      Do you have any social relationships with any of the parties, lawyers or witnesses who will testify in the case?

**C.**      **Jurors' Experience With Correctional Facilities**

1)      Do you, or any of your family or friends, work for a prison, correctional facility or jail?

2)      Have you, or any of your family or friends, ever visited a prison, correctional facility or jail?

3)      Have you ever known anyone who has been incarcerated in a prison, jail or correctional facility?

4)      Have you ever read about life in a prison or correctional facility? Have you watched any television programs or movies about life in a prison or correctional facility?

5)      Do you have any knowledge of what life is like as a correction officer?

6)      Do you have any knowledge of what life is like as an inmate?

7)      Do you have any preconceived notions about life inside correctional facility?

8)      This case involves Lemuel Smith being placed and retained in administrative segregation. Do you have any knowledge or opinions about administrative segregation?

### D.      Jurors' Criminal Justice Experience

1)      Do you, or your family or friends, work for the criminal justice system?

2)      For example, do you, your family, or your friends work as:

a.      a police officer;

b.      a corrections officer;

c.      court staff;

d.      a probation officer;

e.      a parole officer; or

f.      an attorney within the criminal justice system?

3)      Have you learned through books, television or teaching about the criminal justice system?

4)      Do you belong to any groups relating to inmate or prisoner rights?

5)      Do you belong to any groups relating to criminal justice? (e.g., MADD, DARE, etc.)

### E.      Jurors' Legal Experience

1)      Have you or your family or friends ever been involved with the legal system?

2)      Have you or your family or friends ever been arrested?

3)      Have you or your family or friends ever been a plaintiff or a defendant in a civil suit?

4)     Have you or your family or friends ever been a witness in a civil or criminal case?

5)     Have you or your family or friends ever been a juror?

6)     What type of case were you or your family or friends involved in?  What was the result? How does that experience affect your impartiality in this case?

7)     Do you or your family or friends have any legal training or experience?

**F.     Jurors' Employment and Education**

1)     What is your marital status?

2)     Where do you live and how long have you lived there?

3)     Are you employed? If so, by whom and how long?

4)     Please briefly describe your duties in your job or profession.

5)     Please describe your spouse's employment and education background.

6)     Do you have children? If so, what are their ages?

7)     Please describe any children's employment and education background.

8)     What is your prior work experience?

9)     What is your educational background?

10)     Have you ever been called to court to testify as a result of your professional work?

11)     Are any of your children employed?

12)     By whom are they employed?

13)     Are there any lawyers in your family or among your close personal friends?

14) Do you have any special interests outside of your employment? If so, what are they?

15) What groups, clubs or organizations do you belong to?

16) What magazines do you read or subscribe to?

17) What television shows do you watch?

18) Have you watched any television shows or movies specifically pertaining to prison life, such as "Oz" or "Orange is the New Black"?

19) Do you or any of your friends or family have any military experience? Combat experience?

**G.** **Impartiality**

1) At the end of the case, the Court will instruct you on the law. Can you agree to follow the law as the Court gives it to you?

2) You may have an idea of what the law should be. If the law the Judge gives you goes against your idea of what the law should be, can you still agree to follow the law as the judge gives it to you?

3) Do you have feelings toward the parties or the attorneys which would affect your ability to be fair and impartial?

4) Is there anything about this kind of lawsuit that you feel uncomfortable about?

5) Is there anything about your state of mind that would prevent you from giving this case a fair hearing?

6) Is there anything you have heard so far about the case that leads you to believe that you might not be able to be impartial?

7)    Is there anything which leads you to believe that you have an interest in the outcome of this case?

8)    Are there any questions I have overlooked that would indicate that you could not be fair?

9)    Will you try this case on the evidence presented in the courtroom and the law charged to you by this court and not bring in outside information to your deliberations?

10)    Do you understand that merely because the plaintiff files a suit does not mean that he is entitled to win?

11)    Do you understand that sympathy is not to be involved in your verdict?

**H.**    **Burden of Proof**

1)    You understand the Court will instruct you as to the burden of proof in this case.  Will you follow that instruction?

2)    It is possible that, when the case is over, you will feel there is an equal possibility that each side is telling the truth.  If that happens, you must find for the Defendant.  Would you have any problem returning such a verdict?

Dated: January 22, 2024
Rochester, NY

LETITIA JAMES
Attorney General of the State of New York
Attorney for Defendants

 s/ Hillel Deutsch
HILLEL DEUTSCH
Assistant Attorney General of Counsel
NYS Office of the Attorney General
144 Exchange Boulevard, Suite 200
Rochester, New York 14614
Telephone: (585) 546-7430
hillel.deutsch@ag.ny.gov

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**LEMUEL SMITH,**

                *Plaintiff,*                **DEFENDANTS' EXHIBIT LIST**

           -against-                **18-CV-6261**

**COMMISSIONER ANNUCCI, et al.,**

                *Defendants.*

---

Defendants, by their attorney, Letitia James, Attorney General of the State of New York, Hillel Deutsch, Assistant Attorney General, of counsel, attach the following Exhibit List. Defendants will provide Plaintiff with a binder containing these documents at the pretrial conference.

Dated:     January 22, 2024
           Rochester, NY

                    LETITIA JAMES
                    Attorney General of the State of New York
                    Attorney for Defendants

                    s/ Hillel Deutsch
                    HILLEL DEUTSCH
                    Assistant Attorney General of Counsel
                    NYS Office of the Attorney General
                    144 Exchange Boulevard, Suite 200
                    Rochester, New York 14614
                    Telephone: (585) 546-7430
                    hillel.deutsch@ag.ny.gov

**DEFENDANTS' EXHIBIT LIST**

| *Smith v. Annucci et al.,* <br> 18-CV-6261 | *Hillel Deutsch, AAG,* <br> *Attorney for Defendants* |
|---|---|

| *PLF. NO.* | *DEF. NO.* | *DATE OFFERED* | *Marked* | *Admitted* | *DESCRIPTION OF EXHIBITS* |
|---|---|---|---|---|---|
| | 401 | | | | *Periodic reviews of Plaintiff's ad seg status for the three years prior to his filing this suit* |
| | 402 | | | | *Plaintiff's March 17, 2013, misbehavior report and disciplinary packet* |
| | 403 | | | | *Plaintiff's March 21, 2013 misbehavior report and disciplinary packet* |
| | 404 | | | | *Plaintiff's February 28, 2023 misbehavior report and disciplinary packet* |
| | 405 | | | | *Transcript of the testimony in Plaintiff's Criminal trial in Schenectady, NY* |
| | 406 | | | | *Plaintiff's Disciplinary history* |
| | 407 | | | | *DOCC Directive 4933 as issued on 9/26/13* |
| | 408 | | | | *Packet from Plaintiff's original ad seg hearing determination* |
| | 409 | | | | *Plaintiff's Grievance file FPT 35155-18, and supporting documentation* |
| | 410 | | | | *Select ad seg reviews, including Plaintiff's letters to the committee, 2019-2020* |
| | | | | | |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**LEMUEL SMITH,**

*Plaintiff*,

**DEFENDANTS' STATEMENT
OF UNDISPUTED FACTS**

-against-

**18-CV-6261**

**COMMISSIONER ANNUCCI, et al.**,

*Defendants*.

---

Defendants, by their attorney, Letitia James, Attorney General of the State of

New York, Hillel Deutsch, Assistant Attorney General, of counsel, submit that there is no

dispute as to the following facts relevant to the instant matter:

1. Indisputable Facts

The following facts may not be disputed; the Court may take judicial notice of them, as
they appear in the following decisions:

<u>People v. Smith</u>, 59 N.Y.2d 156 (NY Ct. App. 1983)
<u>People v. Smith</u>, 88 A.D.2d 173 (App. Div. 3d. Dept. 1982)
<u>People v. Smith</u>, 63 N.Y.2d 41 (NY Ct App. 1984)
<u>People v. Smith</u>, 117 Misc. 2d 737 (NY Supreme Ct, Dutchess County, 1983)
<u>People v. Smith</u>, 110 Misc. 2d 118, 122 (NY Supreme Ct, Dutchess County, 1981)
<u>Smith v. Goord</u>, 250 A.D.2d 946, 947 (3d. App. 1998)

On November 24, 1976, at approximately 3:00 p.m., Robert Hedderman and Margaret
Byron were murdered while working at the Hedderman Religious Shop located at 50
Columbia Street in Albany. The murderer slit both victims' throats after stabbing them
several times in the chest.

Lemuel Smith, who had been indicted by a Schenectady County Grand Jury for the
kidnapping and attempted robbery of Marlene Maggio, was a suspect in the murders.
Smith had been arrested while still holding the victim, who had undergone an ordeal
lasting several hours. At a at a March 5, 1978, meeting with police and district attorney
officials, Lemuel Smith admitted committing several murders, including those at the
Hedderman Religious Shop in Albany.

At the Maggio kidnapping trial, Lemuel Smith asserted an insanity defense, under the theory that Smith was suffering from a mental disease or defect. This theory was supported by the testimony of Dr. Zvi Klopott, a psychiatrist. Dr. Klopott testified that Smith was suffering from a delusion that his brother John (who died in infancy) in effect lived within defendant and was responsible for the crimes he had committed. In detailing Smith's psychiatric history, Dr. Klopott drew upon a statement given by Smith at the March 5, 1978 meeting, wherein he blamed "John" for the Hedderman and Byron murders. The insanity defense was rejected. At the conclusion of the trial, Smith was found guilty.

Subsequently, an Albany County Grand Jury indicted Lemuel Smith for the murders of Robert Hedderman and Margaret Byron. The case proceeded to trial where Smith's attorney again presented the insanity defense. The defense again failed and Smith was convicted and sentenced to consecutive sentences of 25 years to life for each murder.

On May 15, 1981, Smith was incarcerated in Green Haven maximum security correctional facility.  Despite the fact that he was serving two 25-years-to life sentences for Murder in the Second Degree, Smith was in general population. That day, he found himself alone in the chaplain's office with new corrections officer Donna Payant, a 31-year-old correction officer a mother of three, who had worked at Green Haven for about two months. He overpowered her, mutilated her, including biting off her nipples while she was still alive, strangled her to death, then wrapped her body in garbage bags and disposed of her in a 55-gallon garbage drum which was taken to a prison garbage truck.

Donna Payant's body was found in a garbage dump in Amenia, New York, 20 hours later. Her hands were tied around her back. Her uniform was ripped and there was a dark colored cord wrapped tightly around her neck. She had severe cutting injuries on her nose, lips and eyelids. Her nipples were bitten off and there were some strange bruises on her cheek and neck.

At trial, four separate expert odontologists testified that she had been struck in the head repeatedly, and that she had several bite marks to her face and breasts, her nipples had been bitten off. The bite marks were determined to be premortem; Smith bit her nipples off while she was still alive. The experts determined that the bite marks on Donna Payant matched the bite marks Lemuel Smith had left another of his victims, Marilee Wilson. Lemuel Smith had confessed to kidnapping, raping, torturing and murdering Marilee Wilson in 1977.

He was found guilty of Donna Payant's murder and sentenced to death. The Court of Appeals reversed that finding and sentenced him to life imprisonment.

Following his conviction, Smith was also sentenced to 15 years in the Special Housing Unit ("SHU"). After his release from SHU, a hearing was held to determine if Smith was fit for release to general population; he was found to be too dangerous to be in general population and placed in Administrative Segregation. Smith appealed that finding and it was sustained by the Appellate Division, which held, *inter alia* "In our view, the fact that

petitioner's 15-year placement in special housing had the salutary effect of preventing him from assaulting, raping or murdering any women during that time period does not inure to his benefit. A denial of the opportunity to commit a crime cannot be equated with good conduct or taken as probative evidence of rehabilitation." <u>Smith v. Goord</u>, 250 A.D.2d 946, 947 (3d. App. 1998).

    2.  Facts Defendants believe to be Undisputed:

1) Lemuel Smith was in Ad Seg from September 16, 1996, until September 2020, when he was released, first to involuntary protective custody, then to general population.

2) On April 12, 1959, Plaintiff was sentenced to twenty years in prison in Maryland for Assault in the First Degree after beating a woman with a lead pipe.

3) Plaintiff was paroled in 1968. In 1969, he was arrested and convicted of Attempted Rape in the First Degree. Plaintiff was paroled in October 1976.

4) Lemuel Smith is currently incarcerated on five counts of Murder in the Second Degree; for the murders of Robert Hedderman, Margaret Byron, Joan Richburg, Maralie Wilson, and Donna Payant. He is also incarcerated on convictions of Rape in the First Degree, Robbery in the Second Degree, Robbery in the Third Degree, and Kidnapping in the Second Degree.

5) The kidnapping conviction was for an August 19, 1977 incident wherein he held Marianne Maggio at gunpoint for over eight hours and forced her to drive him across the state.

Dated:      January 22, 2024
             Rochester, NY


                           LETITIA JAMES
                           Attorney General of the State of New York
                           Attorney for Defendants

                            s/ Hillel Deutsch
                           HILLEL DEUTSCH
                           Assistant Attorney General of Counsel
                           NYS Office of the Attorney General
                           144 Exchange Boulevard, Suite 200
                           Rochester, New York 14614
                           Telephone: (585) 546-7430
                           hillel.deutsch@ag.ny.gov

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**LEMUEL SMITH,**

<i>Plaintiff</i>,

-against-

**COMMISSIONER ANNUCCI, et al.**,

<i>Defendants</i>.

**DEFENDANTS' MOTIONS IN LIMINE**

**18-CV-6261**

---

<u>Plaintiff May Not Seek Compensatory Damages for Physical or Emotional Injuries</u>

Plaintiff alleges that he suffered physical and psychological harm as a result of his confinement in administrative segregation ("ad seg") in violation of the Eighth Amendment. (D.N. 1). Plaintiff, who is 82 years old, alleges that he now uses a wheelchair, suffers from a series of physical maladies including diabetes, cancer, cardiac and intestinal diseases, seizures, and has a history of surgeries. (Id. ¶¶ 62-68). He states he has used a back brace since 1990. (Id.) Absent expert testimony, which Plaintiff does not have, Plaintiff cannot establish that any of these injuries were caused by or exacerbated by his confinement in ad seg. Accordingly, he cannot receive damages for them.

To establish an Eighth Amendment claim for prolonged confinement in ad seg, Plaintiff must satisfy both an objective and subjective test. To satisfy the objective element, "the plaintiff must demonstrate that the conditions of his confinement result 'in unquestioned and serious deprivations of basic human needs.'" <u>Jolly v. Coughlin</u>, 76 F.3d 468, 480 (2d Cir. 1996) (citation omitted). Basic human needs have been held to include "food, clothing, shelter, medical care, and reasonable safety.'" <u>Brown v. Doe</u>,

15

2014 U.S. Dist. LEXIS 152925, 2014 WL 5461815, at *6 (S.D.N.Y. Oct. 28, 2014) (quoting, inter alia, Rhodes v. Chapman, 452 U.S. 337, 349, (1981)). Plaintiff must also demonstrate that, subjectively, the defendants imposed those conditions with 'deliberate indifference.'" Jolly, 76 F.3d at 480 (citation omitted). "To constitute deliberate indifference, '[t]he prison official must know of, and disregard, an excessive risk to inmate health or safety.'" (Internal citations omitted); accord H'Shaka v. O'Gorman, 444 F. Supp. 3d 355, 377 (internal citations omitted).

In this case, Plaintiff is not claiming that while in ad seg he was denied food, clothing or shelter, or that he was subject to assaults from prison staff or other incarcerated individuals. Instead, he claims that the conditions of ad seg itself – which are constitutional – caused physical and psychological injury to him by virtue of the length of time he spent there. Some courts have dismissed this argument entirely. See, e.g., Walker v. Bellnier, 2017 U.S. Dist. LEXIS 182582, *23-24 ("Plaintiff does not have a television, cannot purchase items at the commissary, cannot make telephone calls, and cannot listen to pre-recorded religious services. Essentially, Plaintiff takes issue with the normal conditions of SHU confinement and, thus, fails to state a constitutional cause of action.") Even those which have allowed such claims to proceed have relied upon expert testimony. See, e.g., H'Shaka v. O'Gorman, 444 F. Supp. 3d 355, 370 (discussing arguments "related to the inherently unhealthy nature of solitary confinement as supported by his expert witness.").

The need for an expert to make such claims is evident. It is well-settled that "the medical effect on the human system of the infliction of injuries is not generally within the sphere of the common knowledge of the lay person." Barnes v. Anderson, 202 F.3d

150, 159 (2d Cir. 1999) (quoting Collette v. Collette, 177 Conn. 465, 418 A.2d 891, 894 (Conn. 1979)). As such, "expert testimony usually is necessary to establish a causal connection between an injury and its source…" Tufariello v. Long Island R. Co., 458 F.3d 80, 89 (2d Cir. 2006); see also Meiselman v. Crown Heights Hospital, 285 N.Y. 389, 396 (1941) ("Ordinarily, expert medical opinion evidence . . . is required, when the subject-matter to be inquired about is presumed not to be within common knowledge and experience . . . .").

Accordingly, Plaintiff cannot rely on lay testimony – especially his own self-serving lay testimony – to address the fact-intensive question of the medical effects of being in ad seg on this particular Plaintiff. Additionally, Plaintiff is 82 years old, has a very complicated medical history, and his alleged injuries have "multiple potential etiologies." Wills v. Amerada Hess Corp., 379 F.3d 32, 46 (2d Cir. 2004). Accordingly, expert testimony is required.

Without an expert's opinion, Plaintiff cannot argue to a jury that any of his purported physical injuries were caused by his time in ad seg, as opposed any pre-existing conditions he had before entering ad seg, or simply the natural effects of aging. It is not uncommon for 82-year-olds who have never spent a day in prison, much less SHU or ad seg, to require a wheelchair or suffer from any of the other physical maladies described by Plaintiff. Because Plaintiff does not have an expert opining that his physical injuries were caused by his time in ad seg, he is barred from recovering compensatory damages for them.

Plaintiff is doubly barred from seeking compensatory damages for emotional damages stemming from his time in ad seg. First, as detailed above, Plaintiff has no

expert in mental health opining that any alleged emotional injury was caused by his time in ad seg, nor has he produced mental health records suggesting ad seg had a deleterious effect on his mental health. Even if Plaintiff were to testify about, for instance, being in a depressed mental state, he is not qualified to opine on the question of causation. Only an expert may opine on the very complex question of whether any mental health issues Plaintiff may allege were caused by his confinement to ad seg, as opposed to his general state of incarceration, his history of horrific crimes, or his prior extremely complex mental health history.

At his 1978 murder trial, for instance, Plaintiff asserted an insanity defense; "at the trial, the psychiatrist testified that the defendant was suffering from a delusion that his deceased brother John lived within him and was responsible for the crimes that defendant had committed." People v. Smith, 59 N.Y.2d 156, 159 (NY Ct. App. 1983). That defense was opposed by experts proffered by the People, and ultimately rejected. Because he will not be producing either a mental health expert or mental health records, Plaintiff should be barred from asserting that any psychological or emotional injuries he claims to have suffered were caused by his time in ad seg.

Plaintiff is also barred from seeking emotional damages by the PLRA. The Prison Litigation Reform Act ("PLRA") provides, in relevant part, that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The PLRA's limitation on recovery "is generally interpreted to preclude a prisoner complaining of mental and emotional injury during imprisonment, without a showing of physical injury, from receiving an award of

compensatory damages." <u>Walker v. Schult</u>, 45 F.4th 598, 612 (2d Cir. 2022); <u>accord</u> <u>Martinaj v. Uhler</u>, 2023 U.S. Dist. LEXIS 210564, *9-10. (N.D.N.Y. Nov. 27, 2023). As demonstrated above, Plaintiff is unable to show any physical injury was caused by his time in ad seg.  Accordingly, even if he were able to show emotional injuries which were caused by his time in ad seg – and he cannot – he would still be barred from seeking compensatory damages for such injuries.

Accordingly, Plaintiff is barred from seeking compensatory damages for any alleged physical or emotional injury.


<u>Plaintiff is Barred from Seeking Damages from Defendants for the Years They Were Not Involved in Plaintiff's Ad Seg Determinations</u>

Plaintiff alleges he was denied meaningful ad seg reviews from 1996, when he was first placed in ad seg, through his release from ad seg in September 2020. However, Defendants were not employed in positions where they oversaw his ad seg confinement for most of that period. Mr. Annucci, who is sued in his capacity as acting Commissioner, was first employed as acting commissioner on May 1, 2013. Mr. Bellnier was employed as Deputy Commissioner for Correctional Facilities from 2011 through September 2017. Mr. O'Gorman succeeded Mr. Bellnier as Deputy Commissioner for Correctional Facilities, and began in that position in September 2017.

Accordingly, Plaintiff should not be permitted to seek damages against Mr. Bellnier for any claim prior to 2011 or following September 2017, for Mr. Annucci prior to May 1, 2013, and for Mr. O'Gorman prior to September 2017.

<u>Plaintiff Did Not Exhaust Administrative Remedies as to Facts in his Ad Seg Reviews
and the Conditions of Confinement in Ad Seg</u>

Plaintiff has two types of claims; that he was not released earlier from ad seg due to a lack of meaningful reviews, and that the conditions in ad seg violated the Eighth Amendment. The latter claims include allegations that due to the discontinuation of the ad seg incentives program, he was deprived of "time out of his cell, video viewing time, the additional visit per week, sneakers, shorts or sweatpants." (D.N. 1 ¶ 38). Plaintiff further alleges that the location of his cell was in proximity to other incarcerated individuals who suffered from mental illness and he was "regularly subjected to their screaming, outbursts, and banging." (Id. at ¶ 55). Plaintiff did not exhaust a grievance as to any of these issues.

In the three years prior to filing the instant lawsuit, Plaintiff exhausted two grievances; File FPT-31517-16 and file FPT-31861-16. (**Exhibit 1** to this Submission).[1] Neither made mention of the incentives program or any conditions of confinement which violated standard ad seg conditions. The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust any available administrative remedies before bringing an action for claims arising out of their incarceration. <u>See</u> <u>42 U.S.C. § 1997e(a)</u>. "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002). "To exhaust administrative remedies, the inmate must complete the full administrative review

---

[1] Four other grievances, which had been appeal but not yet been decided by CORC when the suit was filed, also did not relate to these issues, but complained of the rate of "idle pay", the lack of sufficient cleaning supplies, and claims ad seg reviews were either not done or were untimely.

process set forth in the rules applicable to the correctional facility in which he is incarcerated." Adams v. Annucci, 537 F. Supp. 3d 475, 477-78 (W.D.N.Y. 2021); accord Jones v. Bock, 549 U.S. 199, 218 (2007) (explaining that the applicable procedural rules "are defined not by the PLRA, but by the prison grievance process itself"); Johnson v. Mason, 2023 U.S. Dist. LEXIS 229603, *8-9 (N.D.N.Y. Dec. 27, 2023).

Because Plaintiff did not file or exhaust a grievance pertaining to the discontinuation of the Incentives Program, his cell placement, or any conditions of confinement which would have been in violation of standard ad seg conditions, he should be precluded from testifying about or seeking damages for these issues.

Similarly, Plaintiff should not be permitted to testify that any of the facts listed in his ad seg reviews was false, as he did not exhaust administrative remedies as to those claims. In this case, the administrative remedies available to Plaintiff were not, as is often the case, the facility grievance process. Instead, the proper administrative remedies for ad seg issues are laid out in 7 NYCRR § 5.52, which states:

> If the inmate still disputes the accuracy or completeness of the information after investigation and determination, the inmate may appeal the determination of the custodian to the Inspector General, Department of Correctional Services, State Campus, Building 2, Albany, NY 12226. The appeal shall be in writing. The Inspector General shall affirm, modify or reverse the determination of the custodian and shall notify the inmate of his decision within 30 days of receipt of the appeal.

Plaintiff was fully aware of his requirement to appeal the 60-day ad seg determinations, as he was explicitly informed of this requirement. When Plaintiff filed a grievance complaining about his ad seg reviews generally, he was informed of the correct process by which to challenge the facts relied upon by the committees reviewing his ad seg confinement. (**Exhibit 2** to this submission). Plaintiff did not do so, and the

Office of the Inspector General (now called the Office of Special Investigations) has no record of Plaintiff disputing the accuracy of any ad seg report.

In the event Plaintiff maintains he did raise this issue with OSI or otherwise exhaust administrative remedies, Defendants request a pre-trial evidentiary hearing on the subject of exhaustion of administrative remedies. The question of exhaustion should be determined by the court at a hearing, rather than on motion.  See, e.g., Delgado v. Potter, 2015 U.S. Dist. LEXIS 18602, at *4-5 (N.D.N.Y. Feb. 17, 2015)("With regard to plaintiff's claim that special circumstances exist which justify non-exhaustion, the Second Circuit has held that disputed facts do not convert exhaustion into a jury issue. Instead, the appropriate remedy would be to hold a hearing on the issue of exhaustion.") citing Messa v. Goord, 652 F.3d 305, 309 (2d Cir. 2011).

Dated:　　　January 22, 2024
　　　　　　Rochester, NY

LETITIA JAMES
Attorney General of the State of New York
Attorney for Defendants

 s/ Hillel Deutsch
HILLEL DEUTSCH
Assistant Attorney General of Counsel
NYS Office of the Attorney General
144 Exchange Boulevard, Suite 200
Rochester, New York 14614
Telephone: (585) 546-7430
hillel.deutsch@ag.ny.gov

# CERTIFICATE OF SERVICE

I certify that on January 22, 2024, I electronically filed the foregoing Defendant's Pretrial

Submission on behalf of Defendants with the Clerk of the District Court using CM/ECF system,

which sent notification of such filing to the following:

1.      Steven Jay Hyman
        McLaughlin & Stern, LLP
        260 Madison Avenue
        18th Floor
        New York, NY 10016

2.      Jonathan Robert Jeremias
        McLaughlin & Stern, LLP
        260 Madison Avenue
        18th Floor
        New York, NY 10016


And, I hereby certify that I have mailed, by the United States Postal Service, the document to the

following non-CM/ECF participant(s):

1.      n/a


                                LETITIA JAMES
                                Attorney General of the State of New York
                                Attorney for Served Defendants

                                 s/ Hillel Deutsch
                                HILLEL DEUTSCH
                                Assistant Attorney General of Counsel
                                NYS Office of the Attorney General
                                144 Exchange Boulevard, Suite 200
                                Rochester, New York 14614
                                Telephone: (585) 546-7430
                                hillel.deutsch@ag.ny.gov

# EXHIBIT 1

Department of Corrections and Community Supervision

Lindsey B. Chiboucas ⌄ | ⚙ | ?



Inmate Grievance    Group Acknowledge    Committee Meeting    Index of Opinions    Help    Project Summary    Search

# Active Cases

| ☐ Case Number | Grievant Last Name | Grievant DIN Number | Title | Case Code | Date Filed | Received Date | Schd Date |
|---|---|---|---|---|---|---|---|
| Count= 4 | | | | | | | |
| FPT-33257-17 | SMITH | 78D0168 | Better Cleaning Supplies | 23 - Housing - Internal Block Affairs | 5/1/2017 | 8/8/2017 | 8/8/2019 |
| FPT-33310-17 | SMITH | 78D0168 | Ad Seg Reviews Untimely | 50 - Miscellaneous | 5/10/2017 | 8/8/2017 | 8/8/2019 |
| FPT-33388-17 | SMITH | 78D0168 | Higher Idle Pay | 50 - Miscellaneous | 6/5/2017 | 8/4/2017 | 8/8/2019 |
| FPT-33782-17 | SMITH | 78D0168 | AD Seg. Hearing Not Done | 50 - Miscellaneous | 8/29/2017 | 11/28/2017 | 8/8/2019 |

✧ Add new item

Department of Corrections and Community Supervision

Lindsey B. Chiboucas ▾ | ⚙ | ?

| Inmate Grievance | Group Acknowledge | Committee Meeting | Index of Opinions | Help | Project Summary | Search Page | Search this site |

## Closed Cases

Count= 13

| Case Number | Grievant Last Name | Grievant DIN Number | Title | Case Code | Date Filed | Received Date | Schd Date |
|---|---|---|---|---|---|---|---|
| EL-24604-03 | SMITH | 78D0168 | Remove MHU Inmates | 24 - Special Housing Units | 1/31/2003 | 3/10/2003 | |
| EL-24830-03 | SMITH | 78D0168 | Unconstitutional Admin-Seg, SHU Conditions | 24 - Special Housing Units | 3/13/2003 | 5/19/2003 | |
| EL-32205-07 | SMITH | 78D0168 | Denied Feed-Up | 24 - Special Housing Units | 2/23/2007 | 3/19/2007 | |
| EL-32560-07 | SMITH | 78D0168 | Hearing Impaired | 24 - Special Housing Units | 4/23/2007 | 5/24/2007 | |
| EL-33836-08 | SMITH | 78D0168 | Wants Out Of Admin. Segregation | 24 - Special Housing Units | 1/28/2008 | 3/27/2008 | |
| EL-34055-08 | SMITH | 78D0168 | Record Administrative Segregation Reviews | 24 - Special Housing Units | 3/7/2008 | 4/23/2008 | |
| FPT-19531-08 | SMITH | 78D0168 | Not Allowed To Keep Cup For Supplement | 24 - Special Housing Units | 6/19/2008 | 7/28/2008 | |
| FPT-19620-08 | SMITH | 78D0168 | Destructive Cell Search | 25 - Search and Seizure/Frisks/Contraband | 7/7/2008 | 8/7/2008 | |
| FPT-22517-10 | SMITH | 78D0168 | Sergeant Persecuting | 49 - Staff Conduct | 3/1/2010 | 3/24/2010 | |
| FPT-22583-10 | SMITH | 78D0168 | Wants Long Underwear/Cell Cold | 24 - Special Housing Units | 3/12/2010 | 5/5/2010 | |
| FPT-28477-14 | SMITH | 78D0168 | Clothing Needs For Disabled | 42 - Inmate Rights - Access/Courts/Counsel/Notary, etc. | 2/7/2014 | 3/28/2014 | 7/9/2014 |
| FPT-31517-16 | SMITH | 78D0168 | Release From Administrative Segregation | 31 - Rules and Regulations | 3/22/2016 | 6/14/2016 | 12/7/2016 |
| FPT-31861-16 | SMITH | 78D0168 | Administrative Segregation Procedures | 31 - Rules and Regulations | 6/20/2016 | 7/14/2016 | 11/9/2016 |

◇ Add new item

# INMATE GRIEVANCE COMPLAINT

*31-*
*release from*
*Admin. Seg.*

| Grievance No. |
|---|
| FPT-31517-16 |

_Five Point's_ CORRECTIONAL FACILITY

Date _March_

Name _Lemuel Warren Smith_ Dept.No. _78D0168_ Housing Unit _12-191-1B_

Program _None_ AM _____ PM

*(Please Print or Type - This form must be filed within 21 calendar days of Grievance Incident)\**

Description of Problem: (Please make as brief as possible) _See Attached Typed Grievance_
_From Lemuel Smith 78D0168_

_____

_____

_____

_____

_____

Grievant
Signature _Lemuel Smith 78D0168 12-191-1B_

Grievance Clerk _____ Date: _____

Advisor Requested ☑ YES ☐ NO Who: _Grievance Supervisor_

Action requested by inmate: _Immediate Release from Administrative Segregation_

_____

_____

This Grievance has been informally resolved as follows:

**RECEIVED**

**MAR 22 2016**

~~**IGRC**~~

_____

_____

_____

This Informal Resolution is accepted:
(To be completed only if resolved prior to hearing)

Grievant
Signature _____ Date: _____

If unresolved, you are entitled to a hearing by the Inmate Grievance Resolution Committee (IGRC).

*An exception to the time limit may be requested under Directive #4040, section 701.6(g).

SMITHDEF00201

**Grievance**
**Name: Lemuel Smith, 78D0168**    *Dated March 18th 2016*

This grievance is addressed to Superintendent John Colvin of Five Points Correctional Facility; Donald Venettozzi, DOCCS' Director of Special Housing and Inmate Discipline; and DOCCS' Acting Commissioner, Anthony Annucci.

I have been confined in punitive isolation for 34 and ½ years. I spent 15 years in disciplinary confinement, and as of September 11, 1996, I have been in Administrative Segregation. Being locked in a small cell for 23 or 24 hours a day for 34.5 years has caused me irreparable physical and psychological harm. This much time in extreme isolation constitutes cruel and unusual punishment, in violation of both the 8th Amendment to the U.S. Constitution and Article 1, Section 5 of the New York State Constitution.

The U.N. Special Rapporteur on Torture says there should be an absolute prohibition against solitary confinement of more than 15 days. I have been confined for 12,590 days, and counting. I am 74 years old, confined to a wheelchair, and suffer from an ever increasing list of ailments and diseases, most of which are debilitating. Despite this, and despite my generally positive disciplinary record and the fact I present no threat to any other individual in this facility, there is no end in sight to my punitive isolation.

I am also grieving the lack of meaningful review of my Administrative Segregation status for years. These boilerplate reviews are a sham and often without legitimate, factual basis. To use them to keep me in Administrative Segregation indefinitely is a violation of my constitutional right to due process.

My federal and state constitutional rights to be free from cruel and unusual punishment have been and continue to be violated by my past and continued confinement in Administrative Segregation. My constitutional and regulatory rights to due process have also been and continue to be violated by my past and present confinement in Administrative Segregation.

Action Requested: Immediate release from Administrative Segregation.

SMITHDEF00202

# INMATE GRIEVANCE COMPLAINT

DepARTMENTAL

50- Admin Seg procedures

| Grievance No. |
| --- |
| FPT-31861-16 |

_Eue Point's_ CORRECTIONAL FACILITY

Date June 9th, 2016

Name Lemuel W. Smith          Dept.No. 78D0168   Housing Unit 12-A1-01B

Program _____   AM _____   PM _____

*(Please Print or Type - This form must be filed within 21 calendar days of Grievance Incident)**

Description of Problem: (Please make as brief as possible) On or About May 18th, 2016 I Received A Copy of the Administrative Segregation 60 Day Review. Each Review is a decision of whether I will be Allowed in General Population, or/and given privaleges granted to those in General Population or situations such as Involountary Protective Custody or Protective Custody which are situations that Prison Security create for prisoner they do not want to punish but are kept from General Population, but are given the privaleges of General Population. Admin Segregation is extended as punishment, with No Charges. The 60 Day Reviews have to fall under the guidelines of the 8th Amendament. My Reviews are based on false statements by Staff and outreight lies in the Summary which carry Recommendations to Albany Central office and Deputy Comm. of Prisons Mr. Joseph Belnier.

See Attached (IA (1B) + 7 Exhibits

Grievant
Signature _Lemuel W. Smith_

Grievance Clerk _____   Date: _____

Advisor Requested  ☑ YES  ☐ NO   Who: _Supervisor Mandi Schultz_

Action requested by inmate: All 60 Day Reviews are Electronically Recorded. All Statements by Staff must be in Writing and Signed, or on Tape; as in a Tier III Hearing. The negitive Reviews deny me Any physical Contact with other prisoners for 20 years and counting. And No Record of Hearings are Kept, therefore an Appeal of the hearing content, and sources can not be made. All other Hearings are Electronically Recorded Administrative Seg. 60 Day Review must be Recorded, for Keeping Records of what transpired.

This Grievance has been informally resolved as follows: _____

_____

RECEIVED
JUN 20 2016
IGRC

_____

This Informal Resolution is accepted:
(To be completed only if resolved prior to hearing)

Grievant
Signature _____   Date: _____

If unresolved, you are entitled to a hearing by the Inmate Grievance Resolution Committee (IGRC).

*An exception to the time limit may be requested under Directive #4040, section 701.6(g).

SMITHDEF00220

Grievance - ALL Administrative Segregation 60 Day Reviews must be recorded in their en-
tirety. ALL Staff making statements must be recorded. - Presently there is no any
I ex anyone ever opposed procedures used during this hearings which are conducted in
violation of my 8th amendment protections & Rights.

Note: From March 16, 2016 Summary sent to Albany Central Office and Deputy Commissioner
Mr. Joseph Belnier is full of false hoods, Exaggerations, and Lies.

#6 Listed - "It was noted that he remotely interacts with other inmates on his unit" I am in a in-
closed solid cell Concrete & Steel. I am not allowed any contact with any prisoner at
all for 8 years I have been in Five Points. On my cell door are Two signs signifying
I am hearing Impaired. I can't even hear Corrections Personnel or Medical Staff unless
they open my feed up slot. - How can I interact with other prisoners, when the person
writing the Summary, are preventing me from doing so by keeping me Isolated in Adminis-
tration Segregation Status.

#7 His cell is clean, again the same person writing the summary, if its Captain S. in the response
in Grievance FPT 31517-16 has refused to update the provision made for me that on Saturday
Clean up the 12 Block (SHU) Porter cleans my cell floor, Shower floor & walls, and the exercise
cage attached to the cell. "His cell and person are clean" When the Regular Corrections Officer
who has been here before Captain S. came to Five Points, my cell floor is day mopped. The
other mention cleans walls on Captain S. to upgrade the above mention Shower Etc. - But its hard
to admit that the Porter has cleaned my cell weekly; not only am I in a wheelchair, but I
Lack the physical strength, verified by the Five Points Medical Dept. since 2010 here at Five
Points. Because to keep me confined in Disciplinary Administrative Segregation Captain S. in his
summary must conclude "Smith continues to have good upper body strength" (but I can't use a
broom or a mop) "and staff believe that he is more than capable of standing" Verified by my
medical records, which Captain Coventry May 13th, 2013 Letter of Concern. After check-
ing my medical records he had a memorandum written for me; and others; because I can
NOT Stand with out something to hold on. "Grabbing hold of an individual and causing
them harm if he was given the opertunity to do So" This is Ridiculus, and totally contrary
to my medical records. I was transferred to Five Points, a medical Transfer, I don't use a
wheelchair just for distances as stated. I use a wheelchair preaminetly, all the time. See June 30th
Review statement "Inmate Smith is single celled and wheelchair bound"
    When my disciplinary tickets are spoke on by Capt. S? "with a pattern of interaction
involving physical contact" Thats an outright Lie. I won't include it, but I have a copy
of my interactions from 1989 to present 2016 Not even one of my interactions involve phy
sical contact. Thats 27 years. / You can get a computer print of of my Non-contact interact
-ions - The computer print out doesn't Lie

RECEIVED
JUN 20 2016
IGRC

SMITHDEF00221

GRIEVANCE - That the Seg hearings must be recorded including 60 Day Reviews.

⑥ "He takes advantage of his phone calls..." Another untruth, I have not made a phone call in the 8 years I have been in Five Points

⑦ "...but he has been observed by staff easily pulling himself up and transferring from his bed to his wheelchair, and from his wheelchair to the restraint chair without difficulty"

First off I have been using this wheelchair for 8 years. The statement makes no sense In my cell there was handicap bars all over to assist me. One is on the wall over my bed to help me sit up in bed on bad days. - But the reason this so called staff need to be on record, is because Lies and exaggeration are being made - ① From my bed to the wheelchair the wheelchair is right beside my bed. As when I shower - Program on bad days. Remove the arm on wheelchair, slide from sitting on bed to sitting in wheelchair, and replace the arm on wheelchair. - When Transferring to the Restraint chair I leave the left wheelchair arm in my cell. I slide from the wheelchair to the seat in the restraint chair, and reverse process when I get back to the wheelchair. - There is NOTHING to pull myself up on. Plus my hands are in handcuffs, and the handcuffs are chained to my waist. How would I pull myself up? And I repeat there is Nothing to pull myself up on to get in or out of the Restraint chair.

Note: I could only obtain my disciplinary record from 1989 to present. But it should be noted Sept 2nd, 2003 Dep. Comm. Lucien J. LeClaire Jr. had to revise Section 305.3(B) that all prisoners in SHU had to be in restraints upon leaving their cell. - Note that from 1989 to 2003 - I had no assaults on my record - But Corrections officers were being Assaulted so much by Prisoners the Dep. Commissioner Le Claire had to change 305.3 of Chapter VI to protect them. I was NOT in a wheelchair then and assaulted No one. I still have no infractions in June 2016 "involving physical contact."

Now I am in a wheelchair, can't clean my own cell without help, weak always constantly have to hold on to something (handicap bars to stand) I will be 75 years old next month - and I am being kept in Disciplinary Segregation - Administrative Segregation because of Lies. "Smith continues to have good upper body strength and staff believe" What staff believe this nonsense? "that he is more than capable of standing grabbing hold of an individual, and causing them harm if he is given the opportunity to do so" On Camera? With Officers with 2 way radios. - With No Privileges inside my cell? "As well as his apparent physical ability to carry out another attack, despite his use of a wheelchair"

What staff is saying this, their needs to be a record kept, and why is this staff saying this Its an accusation, not an observation, and there should be a recorded record for Its obvious my 8th Amendment Rights are being Violated.

CC Deputy Commissioner Joseph Belmer                    Lemuel W. Smith

Acting Commissioner Annucci                              78D0168

RECEIVED
JUN 20 2016
IGRC

SMITHDEF00222

# EXHIBIT 2

| NEW YORK STATE Corrections and Community Supervision | Grievance Number **FPT-31861-16** | Desig /Code **I/31** | Date Filed **6/20/16** |
| | Associated Cases | | Hearing Date **11/9/16** |
| ANDREW M. CUOMO Governor ANTHONY J. ANNUCCI Acting Commissioner | Facility **Five Points Correctional Facility** | | |
| **INMATE GRIEVANCE PROGRAM** **CENTRAL OFFICE REVIEW COMMITTEE** | Title of Grievance **Administrative Segregation Procedures** | | |

## GRIEVANT'S REQUEST UNANIMOUSLY ACCEPTED IN PART

Upon full hearing of the facts and circumstances in the instant case, the action requested herein is hereby accepted in part.

CORC asserts that Administrative Segregation (Ad Seg) is not a disciplinary admission to SHU, and notes that the grievant's Ad Seg hearing was affirmed upon appeal by the Office of Special Housing/Inmate Discipline on 12/11/96. Further, he is subject to the same rules and regulations as those disciplinary inmates who have completed 30 days of satisfactory adjustment and his status is reviewed every 60 days as outlined in Directive #4933, § 301.4. It is noted that the documentation he submitted with the instant complaint was forwarded to Central Office for consideration during his next Ad Seg review, and that Ad Seg hearings are recorded in the computer system, however, there is no requirement in Department policy to record the 60 day reviews electronically. CORC further asserts that he may write to the Superintendent or designee to make a statement regarding the need for continued Ad Seg placement, and has not been presented with any compelling reason to revise current policy or procedures at this time.

CORC has determined that an existing mechanism, with a well-defined appeal procedure, responds to challenges to the accuracy of information, and is set forth in NYCRR, Title 7, §§ 5.50 - 5.52 and Directive #2010, § VI. B. Accordingly, the grievant may direct his challenge to the custodian of the records at the facility; if dissatisfied with the determination, the grievant may appeal the results of that coordinator's decision to the Office of Special Investigations. In addition, CORC advises him to address medical concerns through sick call for the most expeditious means of resolution.

With respect to the grievant's appeal, CORC asserts that his concerns have been appropriately addressed and that the instant complaint was processed in accordance with Directive #4040. He should address grievance issues to the IGP Supervisor, and no malfeasance by staff is noted.

CMV/

--------------------------------------------------------------------------------------------------------------------------

--------------------------------------------------------------------------------------------------------------------------

This document has been electronically signed by Karen R. Bellamy

SMITHDEF00217